## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY W. MANSIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     1:14-cv-00503-JDL |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## AMENDED ORDER ON THE GOVERNMENT'S MOTION TO DISMISS[1]

## I. INTRODUCTION

Timothy W. Mansir, a veteran of the United States Marine Corps, alleges that he was negligently treated by Dr. Thomas Franchini (hereinafter "Franchini"), a former Veterans Affairs Podiatrist at the Togus Veterans Affairs Medical Center (the "VAMC"). He also alleges that the VAMC and Franchini fraudulently concealed Franchini's negligence, preventing him from asserting his rights in a timely fashion. In his Third Amended Complaint (ECF No. 93), Mansir brings claims against the federal government (alternatively, "the VAMC" or the "Government") for vicarious liability for Franchini's alleged negligence (Count I); negligent infliction of emotional distress (Count II); and fraudulent concealment (Count III). The Government has moved to dismiss the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 99).

---

[1] The February 23, 2018 Order on the Government's Motion to Dismiss (ECF No. 112) contained three typographical errors on page 17, incorrectly referencing "June 14, 2012" and "June 2012" rather than "June 14, 2010" and "June 2010." Defendant filed a Consent Motion to Correct the Order (ECF No. 113), which the Court granted. The Order is therefore amended pursuant to Fed. R. Civ. P. 60(a) to correct those errors.

This is the second motion to dismiss that the Government has filed in this case. In an Order issued in February 2016, I resolved almost all of the issues raised in the Government's first Motion to Dismiss in favor of the Government, ruling that Maine's three-year limitations period for bringing claims against health care providers, 24 M.R.S.A. § 2902 (2017), is a statute of repose and not a statute of limitations, and that § 2902 is not preempted by the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2401(b) (2017). *See* ECF No. 34 at 40. The Government argues that because § 2902 is a statute of repose, the three-year repose period for the medical negligence alleged by Mansir began to run no later than May 2009—the month of Mansir's last surgery performed by Franchini—rather than from January 2013, when Mansir discovered the facts underlying his claims. Thus, the claims alleged by Mansir are time-barred absent some reason in law or equity for tolling the statute of repose.

Mansir asserts that the statutory tolling provision in 14 M.R.S.A. § 859 (2017) related to fraudulent concealment applies to his claims:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]

14 M.R.S.A. § 859. If § 859 governs Mansir's claims, its six-year limitations period "starts to run when the existence of the cause of action or fraud [was] discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *Westman v. Armitage,* 215 A.2d 919, 922 (Me. 1966). Extending the limitations period from three years from the date of the alleged tortious act in accordance with § 2902's statute of repose, to six years from the time Mansir

discovered the alleged tortious act, brings Mansir's claims within § 859's six-year statute of limitations. Accordingly, I deferred a final ruling on the applicability of § 859 in connection with the first Motion to Dismiss to afford Mansir, and the plaintiffs in five related actions,[2] the opportunity to conduct limited discovery on the issue of fraudulent concealment and to seek to amend their complaints on the basis of that discovery.

For the reasons explained below, I conclude that a genuine dispute of material fact exists with regard to whether the VAMC and Franchini fraudulently concealed instances of medical malpractice from Mansir, and that these facts are inextricably intertwined with the merits of Mansir's claims. Thus, I cannot yet determine whether, as a matter of law, § 859 governs Mansir's claims, and I deny the Motion to Dismiss as to Count I (Negligence) and Count II (Negligent Infliction of Emotional Distress) for that reason. The Government also moves to dismiss Count II (Negligent Infliction of Emotional Distress) and Count III (Fraudulent Concealment) for lack of subject matter jurisdiction pursuant to restrictions established by the FTCA in 28 U.S.C.A. §§ 2675(a) and 2680(h), and, as explained below, I conclude that Count III should be dismissed.

## II. LEGAL ANALYSIS

The Government seeks to dismiss the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A

---

[2] *See Wood v. United States*, 1:14-cv-00399-JDL; *Prescott v. United States*, 1:14-cv-00551-JDL; *Myrick v. United States*, 1:15-cv-00045-JDL; *Korsiak v. United States*, 1:15-cv-00220-JDL; *Downs v. United States*, 1:15-cv-00525-JDL.

federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit, i.e., subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007).

A defendant may challenge the court's subject matter jurisdiction pursuant to Rule 12(b)(1) in two ways: facially or factually. *See Torres-Negrón v. J & N Records, LLC,* 504 F.3d 151, 162 (1st Cir. 2007). In a facial attack, the court accepts as true those allegations in the complaint—"sometimes augmented by an explanatory affidavit or other repository of uncontested facts"—that are relevant to jurisdiction, draws all reasonable inferences from them in the plaintiff's favor, and determines whether they are sufficient to establish the court's subject matter jurisdiction. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001); *see also Torres-Negrón*, 504 F.3d at 162.

A defendant may also mount a facial challenge to subject matter jurisdiction:

> The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

*Valentin*, 254 F.3d at 363 (internal citations and footnote omitted). "In a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary fact-finding." *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).

Where, in a factual challenge, the necessary facts are relevant both to jurisdiction and to the merits of the plaintiff's case, however, "the standard applicable to a motion for summary judgment" applies. *Torres-Negrón*, 504 F.3d at 163 (quoting *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (internal quotation marks omitted)). If the material jurisdictional facts are not in dispute and the moving party is entitled to prevail on the jurisdictional question as a matter of law, then the motion to dismiss is granted. *Torres-Negrón*, 504 F.3d at 163; *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 397 (D. Me. 2011). On the other hand, "[s]hould the plaintiff present evidence showing that the relevant facts are genuinely disputed, the case proceeds to trial and the jurisdictional dispute will be reevaluated once the factfinder has resolved the issues of fact." *Sunbury*, 770 F. Supp. 2d at 397 (citing *Torres-Negrón*, 504 F.3d at 163); *see also Valentin,* 254 F.3d at 363 n.3 ("[F]or cases in which the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case . . . the court may defer resolution of the jurisdictional issue until the time of trial."). At trial, "[i]t is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

Mansir's Third Amended Complaint alleges facts intended to demonstrate fraudulent concealment in two ways: first, fraudulent concealment allegedly committed by Franchini in misleading Mansir as to the results of his initial surgery and the reasons for the continuing problems he experienced with his ankle; and second, fraudulent concealment allegedly committed by the VAMC in concealing and/or failing to disclose Franchini's negligent treatment to Mansir. I address, in order, (1) the Government's challenges to Mansir's allegations of fraudulent concealment; (2) whether a special relationship existed between Mansir and the VAMC that imposed a duty on the VAMC to disclose Franchini's alleged negligence to Mansir; and (3) the Government's contention that Count II and Count III be dismissed pursuant to 28 U.S.C.A. §§ 2675(a) and 2680(h).

**1.      Fraudulent Concealment under 14 M.R.S.A. § 859**

To benefit from the six-year statute of limitations provided by § 859, Mansir must establish that the VAMC or Franchini, acting as its employee, actively concealed facts from him and that he relied on the concealment to his detriment. *Brawn v. Oral Surgery Assocs.,* 819 A.2d 1014, 1026 (Me. 2003). "Active concealment of the truth connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999) (internal quotation marks omitted). Active concealment does not require an affirmative false statement and "may consist as well in the concealment of what is true as in the assertion of what is false." *Horner v. Flynn*, 334 A.2d 194, 203 (Me. 1975), overruled on other grounds by *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481

A.2d 139 (Me. 1984); *see also Sprague Energy Corp. v. Massey Coal Sales Co.*, No. 05-222-P-S, 2006 WL 696197, at *17 (D. Me. Mar. 15, 2006) ("Fraud need not necessarily take the form of an express false statement; rather, it can be predicated on active concealment of the truth.").

When a plaintiff alleges fraudulent concealment through the active concealment of facts, the court must assess the allegations against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other person. *Brawn*, 819 A.2d at 1026; *see also Harris Mgmt., Inc. v. Coulombe,* 151 A.3d 7, 16 n.7 (Me. 2016).[3] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Alternatively, Mansir must show that a special relationship existed between himself and the VAMC or Franchini, acting as its employee, which imposed a duty to disclose to Mansir the facts associated with the alleged professional negligence, and that the duty was breached by the VAMC or Franchini. *See Brawn*, 819 A.2d at 1026.

---

[3] Mansir argues that the five elements of fraud—as stated in *Brawn*—do not apply in their entirety under § 859. *See Brawn*, 819 A.2d at 1026. Instead, Mansir urges the Court to apply a different § 859 analysis as articulated in *Bangor Water District v. Malcolm Pirnie Engineers*, 534 A.2d 1326, 1329 (Me. 1988). However, *Brawn*—the more recent decision by the Maine Law Court—is clear, and I apply its analysis. *See Brawn*, 819 A.2d at 1026 ("When a plaintiff contends a genuine issue of material fact concerning the defendant's fraudulent concealment has been generated [such that the plaintiff can "benefit from section 859"], the court assesses the facts against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purposes of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other.") (internal quotations omitted).

Absent a special relationship, silence and inaction are insufficient as a matter of law to establish active concealment because omission by silence is not tantamount to supplying false information. *See Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) ("[A]bsent a fiduciary or confidential relationship[] there is no duty to disclose information."); *Glynn v. Atl. Seaboard Corp.*, 728 A.2d 117, 120 (Me. 1999).

I analyze Mansir's assertion of fraudulent concealment by considering (A) the relevant allegations of active concealment made by Mansir; (B) the Government's challenge to those allegations; and (C) Mansir's allegations of a special relationship.

## A. Mansir's Allegations of Active Concealment

### i. Concealment by Dr. Franchini

Mansir's Third Amended Complaint alleges that Franchini concealed material facts in an attempt to hide the fact that he performed improper and unnecessary surgeries. Specifically, Mansir alleges that in March 2008, Franchini diagnosed him as having an "unstable" right ankle and performed an Elmslie ankle reconstruction in April 2008, despite the fact that a contemporaneous x-ray showed only a minor abnormality of Mansir's ankle and a stress test revealed that the Elmslie procedure was unnecessary. Mansir claims that after the April 2008 surgery, he continued to experience ankle pain and that Franchini told him that such pain was temporary and to be expected. Mansir also alleges that Franchini did not disclose any complications from the Elmslie surgery or disclose that the procedure was, as Mansir asserts, unnecessary. In May 2009, Franchini recommended that Mansir undergo a sural nerve release surgery, and Mansir alleges that he relied upon that recommendation

in agreeing to that procedure. Mansir asserts that the second surgery did not alleviate his symptoms and, as a result, he sought treatment from a civilian podiatrist, who recommended and ultimately performed further surgery that resulted in only minor improvement of the pain in Mansir's foot and ankle.

Additionally, the Third Amended Complaint cites to an April 2012 memorandum authored by Yuri Walker, the Director of the Risk Management Program at the Veterans Health Administration's Office of Quality, Safety, and Value, on behalf of a "Subject Matter Expert Panel" convened by the VAMC to evaluate Franchini's patient care (the "Walker Memorandum" or "Memorandum"). The Memorandum states that "it appears that [Franchini] was actively falsifying some medical records, stating that the patient was doing well, when the opposite was true." ECF No. 93-6 at 4. The Memorandum also contains the following question and answer:

> Q: Is it certain that records were being actively falsified, or was it a case of poor clinical judgment?
>
> A: It appears to be a combination of both active falsification and poor clinical judgment. The radiographs did not support the decisions to operate in most cases. In other cases, patients have stated that what the provider told them is different from what was documented in the chart. It has been noted that there was a lack of conservative management in most cases, and an emphasis on surgery.

ECF No. 93 at ¶ 152; ECF No. 93-6.

Mansir contends that Franchini's statement that the pain he experienced after his 2008 Elmslie surgery was temporary and expected, and his recommendation of additional surgery for reasons other than an iatrogenic cause, were knowingly false

or made with a reckless disregard for their truth or falsity and were part of an attempt to conceal the fact that Franchini had performed the 2008 surgery improperly and unnecessarily. Mansir argues that Franchini's alleged concealment is imputed to the VAMC because Franchini was an employee acting within the scope of his employment at the time he is alleged to have falsified medical records and made the statements discussed above.

### ii. Concealment by the VAMC

Mansir contends that the VAMC fraudulently concealed Franchini's malpractice. Specifically, the Third Amended Complaint alleges that in late 2009, VAMC officials became aware of general concerns regarding Franchini's patient care. Dr. Timothy Richardson, then Chief of Staff at the VAMC, directed Dr. Robert Sampson, then Chief of Surgery, to conduct a review of 25 random surgical procedures performed by Franchini. Sampson completed this review in April 2010 and concluded that there were "significant documentation and quality of care issues in a number of [the 25] cases."[4] On April 27, 2010, the VAMC Professional Standards Board suspended Franchini, who later resigned in November 2010.

The Third Amended Complaint also alleges that in April 2010, the VAMC considered it likely that institutional disclosures of unnecessary or inappropriate surgeries performed by Franchini would be required. Under VAMC policy, institutional disclosures are intended to communicate adverse events to patients for "cases resulting in serious injury or death, or those involving reasonably expected

---

[4] It bears emphasis that this and the other alleged facts have not been fully examined and tested by the trial process and finally determined by a factfinder.

serious injury, or potential legal liability[.]" Institutional disclosures "must take place as soon as possible (generally within 24 hours, but no more than 72 hours if adequate information is available) after a practitioner's discovery of an adverse event."

In June 2010, Mansir sought surgical care outside the VAMC. The Third Amended Complaint alleges that in deciding whether to approve the request for outside care, Drs. Richardson and Sampson reviewed Mansir's medical records and discovered that Mansir's records contained false information, that Mansir had received unnecessary and harmful surgery from Franchini, and that Mansir had received substandard care that resulted in serious injury. Mansir alleges that Drs. Richardson and Sampson did not disclose to him, at the time of their discovery, that they believed he had received substandard care but instead added his name to a growing list of patients who had been allegedly harmed by Franchini's medical care. Nearly three years later, in January 2013, the VAMC contacted Mansir to inform him that Franchini may have provided him substandard care. Mansir alleges that the VAMC concealed Franchini's negligence from him by deliberately delaying its investigation and disclosure of Franchini's substandard care.

## B. The Government's Challenge

The Government has submitted declarations and exhibits which, it contends, establish that neither Franchini nor the VAMC engaged in fraudulent concealment. In response, Mansir has submitted his own declarations, deposition transcripts, and exhibits.

The Government argues that Mansir has failed to demonstrate active concealment by Franchini because Mansir fails to set forth facts showing that (1) Franchini acted with fraudulent intent or design; (2) Franchini knew that Mansir's pain after the 2008 Elmslie procedure was not unexpected and should be temporary; (3) that permanent pain after an Elmslie procedure is a material fact; or, (4) even if Franchini had fraudulently concealed a material fact, that Mansir justifiably relied upon such concealment given the amount of evidence of Franchini's potentially negligent care at Mansir's disposal. Consequently, the Government contends that Mansir has failed to allege four of the five elements of fraud. Similarly, the Government contends that there are insufficient facts set forth to (1) show that the VAMC deliberately withheld or concealed anything from Mansir, and, (2) even if there were, to show that Mansir justifiably relied on it.

The Government makes both a facial and a factual challenge to Mansir's allegations. Neither party cites to decisional authority in this Circuit as to whether a defendant can have it both ways by asking the court to consider the sufficiency of a complaint's jurisdictional allegations, while simultaneously disputing most of those allegations and submitting evidence outside the pleadings. In *Torres-Negrón*, however, the court noted that "if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling." 504 F.3d at 162 n.8 (1st Cir. 2007), quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54

(1969); *but see Hollingsworth v. United States*, No. CV-05-80-B-W, 2005 WL 3435099, at *4 n.5 (D. Me. Dec. 14, 2005) ("[A]ddressing the sufficiency of the allegations in the Complaint would appear to be a necessary prerequisite before examining their underlying accuracy."). I adopt the approach suggested by *Torres-Negrón*. Where, as here, a party disputes the jurisdictional allegations of a complaint and offers a substantial body of evidence in support of its position, the court's inquiry should focus on that evidence to determine whether subject matter jurisdiction actually exists. Although I proceed accordingly, I note that even if a facial analysis was required, the allegations of Mansir's Third Amended Complaint would survive facial scrutiny.

It is apparent from the factual record submitted by the parties that the jurisdictional facts (i.e., fraudulent concealment) and the facts related to the merits (i.e., negligence) are intertwined. Both concern what Franchini allegedly did and said to Mansir, and what was and was not communicated to Mansir regarding the potential cause of his ongoing pain. As such, I employ the standard applicable to a motion for summary judgment in ruling upon the Government's factual challenge, *see Torres-Negrón*, 504 F.3d at 162-63, by assessing the record in the light most favorable to Mansir as the nonmovant and resolving all reasonable inferences in his favor. *See Small Justice LLC v. Xcentric Ventures LLC,* 873 F.3d 313, 323 (1st Cir. 2017). Applying that standard, I conclude that Mansir's allegations of active concealment, although disputed by the Government, have a factual foundation and raise a genuine issue of disputed material fact concerning whether Franchini concealed instances of alleged negligence from Mansir. However, I conclude that there is no factual

foundation or genuine issue of material fact concerning whether the VAMC concealed Franchini's alleged negligence from Mansir.

The Government concedes Mansir's allegations that Franchini told him that his pain was a normal and expected outcome of the 2008 Elmslie surgery, and, when Mansir's pain continued, that Franchini recommended additional surgery, which was subsequently found by the VAMC to be overly aggressive, inappropriate, and potentially the cause of the pain. Additionally, the Government correctly asserts that there are no facts that show Franchini knew the specific statements he made to Mansir (as to the success of the first surgery and the cause of the ongoing problems) were false. However, the Walker Memorandum nevertheless raises a question of fact as to whether Franchini engaged in a pattern of active falsification in his dealings with his patients, including Mansir. A jury could reasonably infer from the panel's conclusions, stated in the Walker Memorandum, that Franchini regularly falsified information related to his treatment of VAMC patients, and thus, that the representations he made to his patients, including to Mansir following his 2008 surgery, were either knowingly false or made with reckless disregard as to their falsity.[5]

The Government further contends that the allegedly concealed information—the cause of Mansir's post-operative pain—is not material. In support, the Government presents Dr. Sampson's opinion that the pain Mansir suffered after the 2008 Elmslie procedure "is not a rare complication of lateral ankle surgery." Mansir

---

[5] There is no basis for fraudulent concealment by Franchini for representations made prior to Mansir's first surgery on April 18, 2008, as those were made *before* the act giving rise to the alleged harm.

alleges that Franchini's 2008 Elmslie procedure was negligently performed, that it harmed him, and that his pain was a symptom of that harm. Moreover, there is evidence in the record, including correspondence between Drs. Richardson and Sampson, indicating that the 2008 Elmslie procedure was inappropriate and the possible cause of Mansir's pain. Viewing the facts in the light most favorable to Mansir, a jury could reasonably conclude that his pain was proximately caused by Franchini's alleged negligence and that the alleged concealment of the cause of that pain was material.

The Government argues, however, that Mansir's allegations are of no avail, asserting that Mansir could not have justifiably relied on Franchini's alleged concealment because substantial evidence at Mansir's disposal put him on notice of Franchini's potential negligence. Specifically, the Government produces evidence that by 2009, Mansir did not wish to continue treatment with Franchini and wanted to be evaluated by a new podiatrist outside of the VAMC, and in February 2010 Mansir consulted with a private practice podiatrist who diagnosed "apparent over tightening of the lateral complex" (impliedly by Franchini). Mansir argues that he was not on notice of Franchini's alleged negligence at that time and offers the declaration of his private podiatrist stating that "at no time did [he] explain to Mr. Mansir that Dr. Franchini or any other doctor had made a mistake in his treatment," which Mansir corroborates in a declaration of his own. ECF No. 104-5 at ¶¶ 5-6; ECF No. 104-3 at ¶ 23. The Government also offers evidence that in April 2010 Mansir referred to the surgery performed by Franchini as "botched," and argued for the

VAMC to pay for outside care in June 2010, stating that "it was the VA who messed up in the first place." Mansir explains that these comments were made "in reference to how [he] felt [his] ankle was doing post surgically" or as relating to the VAMC's failure to address his ongoing pain. ECF No. 104-3 at ¶¶ 18, 24.

I conclude that Mansir's justifiable reliance ended by June 2010 when, after having been alerted by a private podiatrist of the "apparent over tightening" by Franchini, Mansir referred to his own surgery as "botched" and accused the VAMC of "messing up." However, this is not fatal to Mansir's claims. A jury could find that prior to his consultation with the private podiatrist, Mansir reasonably relied on Franchini's alleged concealment, thereby triggering the statutory tolling provision of § 859. Under § 859, an "action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]" Mansir commenced this action in November 2014, within six years of either his visit to the private podiatrist in February 2010 or his comments in April and June 2010 criticizing Franchini's medical care.

Resolving all reasonable inferences in Mansir's favor, I conclude that a jury, presented with the facts asserted by Mansir, considered in conjunction with the Walker Memorandum, could reasonably infer that when Franchini told Mansir that his continued pain was temporary and expected, and that the unsuccessful Elmslie surgery in 2008 was successful, Franchini had knowledge of its falsity or acted with reckless disregard as to whether it was true or false, that the false representation was material and made to induce Mansir's reliance, and that Mansir reasonably

relied on the representation. *See Harris Mgmt., Inc.,* 151 A.3d at 16 n.7. Mansir's allegations of active concealment by the VAMC are, however, less persuasive.

The factual record demonstrates that the earliest the VAMC was aware that Mansir had potentially suffered substandard care by Franchini—and thus had actual knowledge of material information to conceal—was June 14, 2010, when Drs. Richardson and Sampson corresponded in response to a request by Mansir to be treated outside the VAMC. Dr. Sampson noted that Mansir had "receive[d] very substandard care." By June 14, 2010, however, Mansir had (1) already refused further treatment by Franchini; (2) demanded outside care; (3) been informed by his private podiatrist of the "apparent over tightening of the lateral complex" by Franchini; (4) referred to Franchini's surgery as "botched"; and (5) accused the VAMC of "messing up" and causing him undue pain. I conclude that there is no dispute of fact that by June 2010, Mansir knew—or should have known—that Franchini may have provided substandard, if not negligent, care, and that Mansir did not justifiably rely on any later alleged concealment by the VAMC.

However, because I earlier concluded that the facts related to subject matter jurisdiction and the merits as to active concealment by Franchini are both inextricably intertwined and largely in dispute, I deny the Government's Motion to Dismiss as to Counts I and II.

### C. Special Relationship

Mansir contends in the alternative that even absent active concealment, a special relationship existed between him and the VAMC so that the VAMC's failure

to inform him of Franchini's alleged negligence constitutes fraudulent concealment. *See Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-00021-NT, 2013 WL 2945058, at *9 (D. Me. June 14, 2013) ("In Maine, fraud by failure to disclose or by silence may be established . . . by demonstrating a special relationship . . . that imposes an affirmative duty to disclose.") (internal citations omitted).

I determined in my February 2016 Order that Mansir had failed to establish that a special relationship existed between him and the VAMC based upon a hospital-patient relationship. ECF No. 34 at 31-32. Thus, Mansir's special relationship argument is barred by the law of the case doctrine. *Remexcel Managerial Consultants, Inc. v. Arlequín,* 583 F.3d 45, 53 (1st Cir. 2009) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)) ("When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Even if Mansir was not barred by the law of the case doctrine, his argument would still fail. Maine law defines a "special relationship" as a relationship "giv[ing] rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and [minor] child, or innkeeper and guest." *Estate of Cummings v. Davie,* 40 A.3d 971, 974 (Me. 2012) (quotation omitted). The nature of Mansir's relationship with the VAMC—that of a Marine Corps veteran receiving outpatient care for a foot and ankle injury—does not reach the level of a power imbalance that characterized the relationships in which the Maine Law Court has recognized a special relationship. *See, e.g., Dragomir v.*

*Spring Harbor Hosp.,* 970 A.2d 310, 315 (Me. 2009) (finding special relationship between hospital and highly vulnerable psychiatric patients); *Fortin v. Roman Catholic Bishop of Portland,* 871 A.2d 1208, 1220-22 (Me. 2005) (finding special relationship between church and student/altar boy who was sexually abused by a priest). While the VAMC occupied an important role in Mansir's life to the extent that it was providing him with medical care, its presence in his life "was not marked by a great disparity of position and influence." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.,* 11 A.2d 308, 314-15 (Me. 2011).

I conclude that there was not a special relationship between Mansir and the VAMC, and, therefore, there is no reason to apply § 859 on that basis.

## 2.    Dismissal of Count III - Fraudulent Concealment

In addition to its argument that Mansir's claims are time-barred pursuant to § 2902, the Government further argues that some of Mansir's claims should be dismissed for lack of subject matter jurisdiction pursuant to two provisions of the FTCA:  28 U.S.C.A. § 2675(a) as to Counts II and III, and § 2680(h) as to Count III. Mansir has neither objected nor responded to these arguments in his opposition brief. "Failure to respond to a motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone[.]" *Andrews v. Am. Red Cross Blood Servs.*, 251 F. Supp. 2d 976, 979 (D. Me. 2003).  However, in an excess of caution, I address the merits of the Government's arguments.

Section 2680(h) limits the Federal Tort Claims Act's waiver of sovereign immunity established by § 1346(b)—which authorizes suits against the United States

for certain torts—over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights[.]" 28 U.S.C.A. § 2680(h) (emphasis added). Thus, because Mansir's claim for fraudulent concealment (Count III) is premised on an alleged misrepresentation, this Court lacks jurisdiction over it. *See Mullens v. United States*, 785 F. Supp. 216, 219 (D. Me. 1992) ("The misrepresentation exception to the FTCA bars suits based on negligent as well as deliberate misrepresentations . . . whether based on false statements or a failure to provide information[.]") (internal quotations and citations omitted), *aff'd*, 976 F.2d 724 (1st Cir. 1992). That fraudulent concealment applies to Mansir's case, for purposes of the statute of limitations analysis under § 859, bears no connection to, and does not save, Mansir's separate claim for fraudulent concealment as a basis to recover damages. I therefore grant the Government's Motion to Dismiss as to Count III.

Section 2675(a) is a notice-of-claim provision and also limits the FTCA's waiver of sovereign immunity that states that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency[.]" 28 U.S.C.A. § 2675(a). Here, the Government contends that Mansir's administrative presentment of claims to the Department of Veterans Affairs (known as "SF-95"), ECF No. 92-3, did not provide notice of either negligent infliction of emotional distress (Count II), or fraudulent concealment (Count III). Because I have already concluded that Count III should be

dismissed pursuant to § 2680(h), I do not analyze it further under § 2675(a), and I limit my analysis to Count II asserting negligent infliction of emotional distress.

To determine whether a plaintiff's administrative claim complies with § 2675(a), the First Circuit has adopted a pragmatic test: "[A]s long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) (finding non-compliance with § 2675(a) where the plaintiff gave administrative notice of claims arising from a postal service trade show and then brought causes of action arising from another incident not mentioned in the notice).

Here, Mansir's SF-95 notice of claim (with attached summary) provided a detailed description of his claims for medical negligence. ECF No. 92-3; s*ee also Ortiz-Lebron v. United States*, No. 10-1513 (SEC), 2012 WL 6552782, at *11 (D.P.R. Dec. 14, 2012) ("The emphasis is not on the actual causes of action, but on the notification that an accident has occurred so that the agency can conduct a full investigation of the incident."). The notice also described Mansir's damages, including those "that are profoundly limiting activity and enjoyment of life for this young veteran." ECF No. 92-3 at 5. I conclude that Mansir's notice that he was seeking damages arising from medical negligence—including those damages described above—sufficiently alerted the VAMC to the possibility of a cause of action for negligent infliction of emotional distress. *See Ortiz-Lebron*, 2012 WL 6552782 at *11 ("[D]ecedent's pre-death pain

and suffering cause of action can be gleaned from the administrative claim, because plaintiffs informed the government that they sought compensation for the very same incident[.]"); *Curtis v. Porter*, 784 A.2d 18, 25-26 (Me. 2001) (recognizing that a separate duty to act reasonably to avoid emotional harm to others arises in the limited circumstance where "a special relationship exists between the actor and the person emotionally harmed" and that negligent infliction claims are "routinely added to complaints stating a cause of action in tort"). The Government's motion to dismiss is therefore denied as to Count II (Negligent Infliction of Emotional Distress).

### III. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss the Third Amended Complaint (ECF No. 99) is **GRANTED** as to Count III (Fraudulent Concealment), and **DENIED** as to Counts I (Negligence) and II (Negligent Infliction of Emotional Distress).

**SO ORDERED.**

**Dated this 7th day of March 2018.**

_____**/s/ JON D. LEVY**_____
**U.S. DISTRICT JUDGE**